UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**NATIONAL WILDLIFE FEDERATION,**
et al.,

    Plaintiffs,

    v.

**U.S. ARMY CORPS OF ENGINEERS,** et al.,

    Defendants.

Civil Action No. 14-1701 (JDB)

## MEMORANDUM OPINION

On March 14, 2016, the Court granted the U.S. Army Corps of Engineers' cross-motion for summary judgment insofar as it requested dismissal of plaintiff conservation groups' suit for lack of standing. The conservation groups timely filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). In their motion, they contend that the Court improperly dismissed the case without providing them an opportunity to specifically address the redressability prong of Article III standing. The Corps opposes the motion on the ground that, in fact, the conservation groups had the chance to make these standing arguments at the motions hearing. The Court agrees with the Corps and will deny the motion.

## PROCEDURAL HISTORY

The conservation groups brought this lawsuit to challenge the Corps' decision to reissue nationwide permit 13 ("NWP 13"), which authorizes the discharge of dredge and fill material to construct bank stabilization projects. Second Am. Compl. [ECF No. 15]. In its cross-motion for summary judgment, the Corps argued that plaintiffs had not met their burden to demonstrate Article III standing. Defs.' Cross-Mot. Summ. J. [ECF No. 25] at 13–16. Plaintiffs' six standing

1

declarations, the Corps argued, failed to identify an injury-in-fact. Id. For the most part the Court agreed, but with one exception. The Court found that plaintiffs had identified an aesthetic and recreational harm to one declarant caused by existing bulwarks. Nat'l Wildlife Fed. v. U.S. Army Corps of Eng'rs, No. 14-1701, 2016 WL 1048767, at *4 (D.D.C. Mar. 14, 2016). But the very narrow nature of this injury implicated another standing requirement, redressability: could this particular injury be redressed by the relief plaintiffs sought? At a motions hearing held on January 19, 2016, the Court pressed the conservation groups to explain how their complaint, which sought relief only with regard to future projects, could encompass this specific injury. Relying on that colloquy, the Court held that the relief sought could not redress an aesthetic injury from an existing bulkhead, and hence plaintiffs did not have standing. Id. at *5–6.

## DISCUSSION

A Rule 59(e) motion should be granted if the court "finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks omitted). The conservation groups seek to have the judgment in this case vacated on the grounds that (1) the Court should have allowed the parties to brief the redressability issue and/or (2) the Court should have given the conservation groups leave to amend to cure the standing defect before dismissing the case. Pls.' Mot. Alter J. [ECF No. 34] at 2, 5. Plainly, these arguments do not assert a change of controlling law or new evidence. It is less obvious whether they rely on "clear error" or "manifest injustice" or both. In any event, neither argument convinces the Court that Rule 59(e) relief is appropriate.

The conservation groups assert that "the Court should have given [them] the opportunity to fully brief and be heard on the specific issue of redressability before dismissing the case." Pls.'

Mot. at 2. This argument relies principally on cases that are critical of "'[s]ua sponte dismissals without prior notice or opportunity to be heard.'" Id. (quoting Joyce v. Joyce, 975 F.2d 379, 386 (7th Cir. 1992)). But the Court's judgment here was not sua sponte, that is, "[w]ithout prompting or suggestion." Black's Law Dictionary 1560 (9th ed. 2009). Rather, plaintiffs' lack of standing was a focal point of defendants' cross-motion for summary judgment. It was fully briefed by both sides, and then at the motions hearing the Court laid out the matters it expected to hear about, including "a standing issue." Hr'g Tr. [ECF No. 35] 5:22–23. Article III standing comprises three well-known elements, including that the injury is "likely to be redressed by a favorable decision." In re: Idaho Conservation League, 811 F.3d 502, 508 (D.C. Cir. 2016). For the conservation groups to claim that they knew standing was challenged, but were caught unaware by the redressability inquiry, is slicing the issue too thin—indeed it defies credulity.

And even assuming that the Court raised the question of redressability "on its own motion," the conservation groups received adequate notice and an opportunity to be heard at the January 19, 2016, motions hearing. During plaintiffs' initial argument, the Court flagged its skepticism about the connection between the injury allegedly caused by an existing bulkhead and the prospective relief sought. The Court inquired whether this was a live issue: "If [the] Bull River [bulkhead] was completed actually before you filed your complaint, I don't see how the complaint encompasses it." Hr'g Tr. at 33:10–14. And the Court indicated that plaintiffs' counsel should address the impact of this issue on assessing standing. Id. at 34:10–16. The possible dissonance between the relief sought and the injury alleged was again raised by the Court in its question to government counsel: "[G]iven the fact that the [Bull River] project was completed before the complaint was filed, and as I read the complaint, the complaint seeks declaratory relief with respect to Nationwide Permit 13 and seeks future injunctive relief with respect to future projects under

Nationwide Permit 13. So does the complaint properly encompass a challenge to a completed project?" Id. at 63:13–19. The conversation from there turned to mootness and the government answered that as far as prudential mootness went, "we think the Court has discretion to say that this is moot because the plaintiffs are not asking for relief that is available." Id. at 64:3–5. All this goes to show that even if the Court did raise redressability on its own, plaintiffs were on notice at the hearing of the Court's concern and had the opportunity at that time to explain how the relief they sought in the complaint could encompass an injury caused by already completed bulkheads. Id. at 67:10–11 (The Court: "I'll give [plaintiffs' counsel] a chance to respond to anything that came up with respect to standing."). And in the intervening two months between the hearing and this Court's decision, plaintiffs could have sought to provide further information to the Court on this obvious concern. But they did not.

Plaintiffs now wish they had devoted more attention to the issue of redressability, and in particular believe they should have had the opportunity to provide additional briefing on the matter. They cite Prakash v. American University, 727 F.2d 1174, 1179–80 (D.C. Cir. 1984), as support for their position that the Court should have given them an opportunity "to fully brief . . . the specific issue of redressability." But Prakash is distinguishable. There, the district court had made a jurisdictional decision "on the paper record" when the declarant's credibility was at issue. Id. at 1180. In that circumstance, the district court was required to "hold a hearing in order to adequately assess credibility." Id. But the court of appeals confirmed that, normally, a court "may rely upon either written or oral evidence." Id. at 1179–80. Here, the Court finds no basis to hold that parties who have had a full opportunity to argue the jurisdictional issue must also be afforded a supplemental briefing opportunity. It was not error in this case to decide standing on the record

4

before the Court at the conclusion of the motions hearing, which specifically addressed redressability.

Nor did the Court commit error when it dismissed the case without providing the conservation groups leave to amend their complaint. Once again, the conservation groups cite cases dealing with sua sponte dismissals, see Pls.' Mot. at 5 (citing Plummer v. Mayor, D.C., 371 F. App'x 106, 107 (D.C. Cir. 2010)), but the dismissal here was not on the Court's own motion. It was based on the government's motion, which argued that plaintiffs lacked standing, and followed a hearing specifically addressing redressability. Moreover, plaintiffs did not seek leave to amend their already amended complaint at any time prior to the Court's March 14 decision. Rule 15(a) plainly "applies only when the plaintiff actually has moved for leave to amend the complaint." Belizan v. Hershon, 434 F.3d 579, 582 (D.C. Cir. 2006).

As far as the Court can tell, plaintiffs' motion for reconsideration rests on two alleged procedural errors: failure to allow for additional briefing or to grant leave to amend. As explained above, these supposed errors are not grounds for Rule 59(e) relief. Nowhere in their motion do they argue that the Court's redressability assessment itself constituted clear error. The Court will not grant extraordinary relief under Rule 59 based on an argument not made.[1]

---

[1] Had they made such an argument, the conservation groups would have had to show that the remedial measures available to the Corps upon vacatur include options that could remedy their only injury-in-fact. Removal—which could obviously redress the aesthetic injury—was expressly disavowed. And whether mitigation—an option not previously identified—can remedy an aesthetic injury is disputed. Compare Pls.' Mot. at 6 (arguing that mitigation could address the aesthetic injury-in-fact), with Defs.' Opp'n [ECF No. 36] at 7 ("[Mitigation] would not ameliorate the visual injury caused by the bulkhead's presence."). Plaintiffs' citation to 33 C.F.R. § 326.3, which explains the process of after-the-fact permitting in general terms, would not be enough on its own to convince the Court that its original redressability analysis was clearly erroneous. See Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988) ("To be clearly erroneous, a decision must strike [a court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week-old, unrefrigerated dead fish.").

It is nonetheless apparent that behind plaintiffs' post-hoc requests to provide additional briefing or to amend the complaint is their belief that had they "better explained how [their] injuries could be redressed both in [their] complaint and at oral argument . . . the Court could have found that the conservation groups have standing." Pls.' Mot. at 6. They now point out that if NWP 13 were vacated, the Corps would have the authority to remove existing bulkheads or require additional mitigation. See id. (citing 33 C.F.R. § 326.3). There was a time and a place, though, for plaintiffs to seek relief for injuries caused by existing bulkheads. First, plaintiffs could have done so in their complaint. In fact, one of the cases they cite demonstrates how a party may seek "the remedies of remediation and mitigation" in its complaint. Ogeechee-Canoochee Riverkeeper, Inc. v. T.C. Logging, Inc., No. 608CV064, 2009 WL 2390851, at *8 (S.D. Ga. Aug. 4, 2009). But plaintiffs did not identify such relief in their complaint or in the briefing of this case. Second, plaintiffs should have done so when pressed by the Court at oral argument to clarify their position regarding existing bulkheads. The Court inquired: "Your complaint only seeks relief with respect to Nationwide Permit 13 and <u>future projects</u> under Nationwide Permit 13. . . . [I]t doesn't seem to me that [the Bull River bulkhead is] actually covered by your complaint." Hr'g Tr. at 33:10–22. Plaintiffs' counsel responded: "I see what you're saying, Your Honor." Id. at 33:23. Given that agreement, the Court continued: "[Y]ou need to think about it for standing purposes as well, because if that's true, it may relate to standing as well." Id. at 33:24–34:1. Plaintiffs' counsel agreed. Id. at 34:2. The Court then took care to repeat the possible consequences of this line of reasoning:

> [A]s a specific claim in the case, it doesn't seem to me that [the Bull River bulkhead is] covered by your complaint, by the relief you seek, and because it was done before the complaint was filed, and that may have some impact on assessing standing with respect to the declarations that have been submitted and any reference to that particular project.

Id. at 34:11–16.  Plaintiffs' counsel responded: "Okay."  Id. at 34:17.  Finally, the Court indicated that plaintiffs' counsel should address the impact of this issue on standing.  Id. at 34:18.  And yet, on rebuttal, plaintiffs' counsel made no attempt to correct the Court's understanding of the conservation groups' position: that the complaint only sought relief with respect to future projects and that an existing bulkhead was therefore not "actually covered by the complaint," and that this mismatch could affect standing.  In particular, plaintiffs' counsel never clarified that the relief they sought included a remedy for existing projects, which might be accomplished by mitigation.  And he explicitly agreed that the conservation groups did not seek relief that would require tearing out an existing bulkhead.  Id. at 33:3–9.  The Court does not see any error in accepting or relying on the conservation groups' own representations—or lack thereof—at oral argument, after repeated inquiry from the Court.

     A Rule 59(e) motion cannot "be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'"  Exxon Shipping Co. v. Baker, 554 U.S. 471, 486 n.5 (2008) (internal quotation marks omitted).  Nor is it a "chance for [a party] to correct poor strategic choices."  SEC v. Bilzerian, 729 F. Supp. 2d 9, 15 (D.D.C. 2010).  "The strictness with which such motions are viewed is justified by the need to protect both the integrity of the adversarial process in which parties are expected to bring all arguments before the court, and the ability of the parties and others to rely on the finality of judgments."  U.S. Commodity Futures Trading Comm'n v. McGraw-Hill Cos., 403 F. Supp. 2d 34, 36 (D.D.C. 2005).  For these reasons, the Court will not grant Rule 59(e) relief on the basis of standing arguments that the conservation groups had a full and fair opportunity to present.

## CONCLUSION

Hindsight is 20-20, and in light of the Court's standing determination, the conservation groups now see more clearly the full implications of the Court's line of questioning at the motions hearing. And had they presented the arguments then that they articulate now, the Court may have also had a clearer view of their currently stated position. But the fact that additional briefing could have been helpful does not mean that the Court's decision to resolve this case following full briefing and oral argument—including specific questioning of plaintiffs' counsel—was in error.

Because the Court will deny plaintiffs' motion to amend the judgment, the post-judgment request to amend the complaint will be denied as moot. See Ciralsky v. CIA, 355 F.3d 661, 673 (D.C. Cir. 2004).

/s/
JOHN D. BATES
United States District Judge

Dated: July 8, 2016